IN THE UNITED STATES DISTRICT COURT
FOR WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK URL/USER NAME:<br><br>https://www.facebook.com/samii.sodaa.9<br><br>THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK INC. | Case No. 7:21mj68<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Brian P. McBride, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user ID that is stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2. I am a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives, and have been since April 2021. I am employed by the Roanoke County Police Department as a detective and have been a sworn law enforcement officer within the Commonwealth of Virginia for over seven years. During that time, I have conducted numerous firearms investigations and have received specialized law enforcement training on the matter to

include social media investigations, open source and social media analysis, and street gang investigations among other topics.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 922(g) have been committed by Jordy Allen BYAS (DOB ▬▬, SSN ▬▬▬▬). There is also probable cause to search the information described in Attachment A for evidence of these crimes, contraband, and property used in committing a crime as described in Attachment B.

## TECHNICAL BACKGROUND ON FACEBOOK

5.      Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

6.      Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account

includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

7. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

8. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

9. Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link

to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

10. Facebook users can exchange private messages on Facebook with other users. Those messages are stored by Facebook unless deleted by the user. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a chat feature that allows users to send and receive instant messages through Facebook Messenger. These chat communications are stored in the chat history for the account. Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

11. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

12. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

13. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

14. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through

the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

15.     Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

16.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

17.     Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

18.     Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

19. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a

plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

20. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## PROBABLE CAUSE

21. Jordy Allen BYAS (hereinafter BYAS) has been previously convicted of an offense punishable by a term of imprisonment exceeding one year, to wit: Possession of a Schedule I or II Controlled Substance in Roanoke City (Virginia) in 2019 and Possession with the Intent to Manufacture/Sell Schedule I or II in Montgomery County (Virginia) in 2013. As such, he is prohibited from possessing firearms. BYAS should be aware of his status as a felon since he served more than year in custody for his Montgomery County conviction.

22. Your affiant has called both the Roanoke City and Montgomery County Circuit Court Clerk's office to determine whether BYAS has since had his firearms rights restored. As of May 17, 2021, BYAS has not had his firearms rights restored and is still prohibited from possessing a weapon. It appears that BYAS has, however, had his civil rights restored, by the Commonwealth of Virginia.

23. Through open source intelligence it was learned that BYAS operates a Facebook page under the alias "Samii Sodaa." This Facebook profile consists of numerous photos and videos of BYAS. The Facebook profile link is: https://www.facebook.com/samii.sodaa.9. The birthdate listed on the profile, ▮▮▮▮▮▮▮, also matches BYAS' date of birth in his DMV records.

24. On May 11, 2021, a video was observed on the page's Facebook story, a feature that allows a user to post a short user generated photo or video collection for others to view. In your affiant's experience that photo or video is often, although not exclusively, made in close proximity to the post. This image, seen below, showed BYAS holding what appears to be a black handgun.



25. On May 16, 2021, a video was observed on the page's Facebook story that showed BYAS holding what appears to be a different black handgun.



26. Both images were sent to the ATF Firearms and Ammunition Technology Division. The Division could not confirm whether BYAS possessed actual firearms as they could not tell whether those items would expel a projectile by the action of an explosive. However, they were able to provide the following relevant information:

   a. May 11, 2021 Photo: Appears consistent with a Generation 3 Glock. The finger grooves on the grip, trigger guard area, and slide serrations are similar. The "stick mag" as shown in the photo will not fit in any of the unaltered airsoft pistols that were able to be checked at the Firearms and Ammunition Technology Division.

   b. May 16, 2021 Photo: Appears to have features consistent with a Smith & Wesson Shield. This includes the front of the slide profile, the guide rod, and the laser attached to the front. The front portion of the frame, front of the trigger guard and the ejection port area are also all consistent with the Smith and Wesson Shield.

27. The Montgomery County Jail Record's Division was contacted and advised that BYAS was held in their facility upon his arrest (March 13, 2013) for Possession with Intent to Manufacture/Sell Schedule I, II. He was then transferred to the Western Regional Jail and held until the completion of his sentence on September 15, 2015. The following photos show BYAS' progression from that March 2013 arrest (first photo, before felony conviction), his 2015 release (second photo), and a more recent booking photo taken of BYAS in June 2019 (third photo). Based upon the progression of his facial tattoos, your affiant believes that that the May 16, 2021 video/still shot was taken after BYAS had been convicted of a felony offense.






28.     On May 17, 2021, a preservation request was submitted to Facebook for the account under Facebook user ID samii.sodaa.9.

29.     On May 18, 2021, the ATF Internet Investigations Center provided your affiant with additional social media content depicting BYAS handling what appeared to be firearms. One additional picture from Facebook, as seen below, was uploaded on August 26, 2020. Another additional picture from Facebook, again as seen below, was uploaded on August 9, 2020. Other photographs and videos were uploaded or posted, presumably by BYAS, to different social media platforms to include Twitter, Instagram, and YouTube. These other photographs

and videos are similar in nature and show BYAS possessing what appears to be various handguns and rifles with the oldest known firearm image being a Twitter picture posted 5/21/19.





30.     In reviewing the public content shared by BYAS, your affiant notes that he is very active in his use of his Facebook account. To your affiant's knowledge, including what he has observed and been relayed by other members of law enforcement, criminals often utilize the Facebook messenger feature to communicate with one another about their illegal activities. More so with respect to narcotics but also when it comes to weapons. Based upon his consistent use of Facebook, the images shown and described above and the different type of firearms it appears he has possessed, your affiant has reason to believe that BYAS likely communicates with others through Facebook to obtain those weapons. Therefore, in addition to Facebook possessing evidence related to BYAS illegal possession of firearms, Facebook may also possess evidence related to his acquisition of those weapons.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

31.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

32.     Based on the foregoing information, your affiant submits that probable cause exists to believe that BYAS has been engaging in activity that violates Title 18, United States Code 922(g). Your affiant further believes that the Facebook records being sought will contain direct evidence related BYAS' unlawful possession of firearms.

33. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Facebook. Because the warrant will be served on Facebook, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

34. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated as defined by 18 U.S.C. § 2711(3)(A)(i).

35. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted,

*BMcB*

Brian P. McBride
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to me by reliable electronic means (telephone) on May 27, 2021, 2021

*Robert S. Ballou*

HON. ROBERT S. BALLOU
UNITED STATES MAGISTRATE JUDGE